IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **DONALD G. HYSELL,** | : | |
| **Plaintiff,** | : | Case No. 2:06-cv-170 |
| v. | : | Judge Holschuh |
| **LICKING COUNTY SHERIFF RANDY THORP, et al.,** | : | Magistrate Judge Kemp |
| | : | |
| **Defendants.** | : | |

**MEMORANDUM OPINION & ORDER**

Following his prosecution for charges of menacing threats and resisting arrest, Plaintiff Donald Hysell filed suit against Licking County Sheriff Randy Thorp, Deputy Kris Kimble, Sergeant Chad Carson and Sergeant John Loy. Plaintiff seeks damages pursuant to 42 U.S.C. § 1983 for alleged violations of his Fourth and Fourteenth Amendment rights. He alleges that he was arrested and prosecuted without probable cause and that excessive force was used against him. This matter is currently before the Court on cross-motions for partial summary judgment. (Record at 9, 16).

**I.    Background and Procedural History**

Mid-afternoon on May 24, 2005, Deputy Kimble, Sergeant Carson, and Sergeant Loy of the Licking County Sheriff's Office responded to a call from Mary Ann Elementary School in Newark, Ohio. When they arrived, they were met in the parking lot by a number of parents and school employees, including school janitor Carolyn Blizzard. They told the officers that Donald Hysell, who owned real property that abutted the school parking lot, had driven his tractor too close to several parked cars while mowing his grass, leaving scuff marks from the tractor tires on

the bumpers of the cars. They also told the officers that Hysell often complained about school employees and parents parking on his property. The officers asked the women to fill out witness statements.

Blizzard wrote that Hysell told her that he was going to have the cars towed because they were on his grass. When she told him to do what he needed to do, he allegedly got off his tractor and came toward her with his hands up in the air, yelling that he was "tired of [her] shit." As she turned to go back into the school, she told him that she was "tired of his shit." After the officers reviewed Blizzard's written witness statement, they asked a couple of follow-up questions which are appended to her written statement. First, they asked her if she felt threatened by Hysell. She wrote "yes." They also asked her whether Hysell ran after her in an aggressive manner. She replied that he did.

The officers then went up the driveway to Hysell's house. He denied knowing anything about the damaged vehicles, but admitted that he had been mowing near the parking lot. Hysell then became angry and said he wanted to file charges against the owners of the vehicles because they were parked on his property. When Deputy Kimble told him that the tires of the cars were on the gravel parking lot, Hysell explained that he also owned the portion of the gravel parking lot where the cars were parked. He threatened to have the cars towed the next day. Kimble gave Hysell the opportunity to make a written statement but Hysell refused to do so.

Kimble then arrested Hysell for criminal damaging and menacing. Kimble asked Hysell to put his hands behind his back so he could handcuff him. Hysell refused to comply, and a struggle ensued. The officers forced him to the ground and physically restrained him. They then transported him to the jail, and charged him with menacing and resisting arrest. At Hysell's trial,

the judge dismissed the menacing charge for lack of sufficient evidence, and the jury acquitted Hysell on the charge of resisting arrest.

Hysell then filed suit under 42 U.S.C. § 1983 against Kimble, Loy, and Carson in their individual capacities, and against Licking County Sheriff Randy Thorp in his individual and official capacities. Hysell alleges arrest and prosecution without probable cause and excessive use of force. He also alleges that these constitutional violations were caused by certain policies or customs of the Licking County Sheriff.

Plaintiff has moved for partial summary judgment on his claims against Kimble, Loy, and Carson for arrest and prosecution without probable cause. Defendants have moved for partial summary judgment on the same claim. The merits of Plaintiff's excessive force claims are not before the Court.[1]

**II.    Standard of Review**

Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). The standard for summary judgment is found in Federal Rule of Civil Procedure 56(c):

> [Summary judgment] . . . should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

---

[1] On July 6, 2007, Magistrate Judge Kemp denied Defendants' motion for leave to file summary judgment *instanter* on the excessive force claim.

3

Summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." Poller v. Columbia Broadcasting Sys., 368 U.S. 464, 467 (1962) (quoting Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627 (1944)). See also Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. Lashlee v. Sumner, 570 F.2d 107, 111 (6th Cir. 1978). The court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Weaver v. Shadoan, 340 F.3d 398, 405 (6th Cir. 2003).

In a motion for summary judgment, the moving party bears the initial burden of showing that no genuine issue as to any material fact exists and that it is entitled to a judgment as a matter of law. Leary v. Daeschner, 349 F.3d 888, 897 (6th Cir. 2003). All the evidence and facts, as well as inferences to be drawn from the underlying facts, must be considered in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); Wade v. Knoxville Util. Bd., 259 F.3d 452, 460 (6th Cir. 2001). Additionally, any "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-60 (1970).

"[T]he mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson</u>, 477 U.S. at 247-48 (emphasis in original).  A "material" fact is one that "would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of [an] appropriate principle of law to the rights and obligations of the parties." <u>Kendall v. Hoover Co.</u>, 751 F.2d 171, 174 (6th Cir. 1984).  <u>See also</u> <u>Anderson</u>, 477 U.S. at 248.  An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248.  <u>See also</u> <u>Leary</u>, 349 F.3d at 897.

If the moving party meets its burden, and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. <u>Celotex</u>, 477 U.S. at 322.  The nonmoving party must demonstrate that "there is a genuine issue for trial," and  "cannot rest on her pleadings." <u>Hall v. Tollett</u>, 128 F.3d 418, 422 (6th Cir. 1997).

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e).

The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. Anderson, 477 U.S. at 252. The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Phillip Morris Companies, Inc., 8 F.3d 335, 340 (6th Cir. 1993). The court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence. Anderson, 477 U.S. at 251-52; Lansing Dairy, Inc., 39 F.3d at 1347.

**III.    Analysis**

Plaintiff's complaint alleges that Kimble, Loy, and Carson arrested and prosecuted him without probable cause. Plaintiff further contends that these acts were caused by certain policies or customs of the Licking County Sheriff's Office, including a failure to adequately screen, train, supervise, and discipline employees, and acquiescence in the alleged violations. Plaintiff seeks relief under 42 U.S.C. § 1983 for alleged violations of his Fourth Amendment rights.

That statute states, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. This statute "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979)).

6

In order to recover under § 1983, a plaintiff must prove that the defendant, while acting under color of state law, violated rights secured by the Constitution or laws of the United States. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970). In this case, it is undisputed that the officers were acting under color of state law when they arrested Plaintiff and caused charges to be brought against him. The only question is whether their conduct violated his Fourth Amendment right to be free from unreasonable seizures.

Plaintiff has sued the arresting officers in their individual capacities, and Licking County Sheriff Randy Thorp in his official and individual capacities. As the Supreme Court noted in Kentucky v. Graham, 473 U.S. 159 (1985), a claim brought against a government employee in his *individual* capacity seeks to hold the employee personally liable for actions taken under color of state law. However, a claim brought against a government employee in his *official* capacity is the equivalent of a claim brought against the governmental entity itself. Id. at 165-66. The Court turns first to the claims brought against Defendants in their individual capacities.

### A. Individual Capacity Claims

#### 1. Against Sheriff Thorp

Sheriff Thorp has moved for summary judgment on all claims brought against him in his individual capacity. A supervisor cannot be held personally liable under § 1983 on the basis of *respondeat superior*. A supervisor is subject to personal liability only if he "encouraged the specific incident of misconduct or in some other way directly participated in it." Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). The supervisor must have "implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending [officers]." Id. (citing Hays v. Jefferson County, 668 F.2d 869, 874 (6th Cir. 1982)).

In his memorandum in opposition, Plaintiff concedes that because he has no evidence that Sheriff Thorp participated in his arrest or prosecution, all claims brought against Thorp in his individual capacity should be dismissed.

### 2. Against Deputy Kimble, Sergeant Carson and Sergeant Loy

The parties have filed cross-motions for partial summary judgment on Plaintiff's claim against Kimble, Carson, and Loy of arrest and prosecution without probable cause. For the reasons set forth below, the Court finds that probable cause existed and that the officers are, therefore, entitled to summary judgment on this claim.

Before turning to the merits of the claim, two threshold matters must be addressed. First, Plaintiff argues that because the state court dismissed the menacing charge at trial for lack of evidence, Defendants are collaterally estopped from relitigating this issue. As Defendants correctly point out, however, the question of whether there is sufficient evidence to support a conviction is legally distinct from the question of whether probable cause existed to believe that a crime had been committed. See Polk v. Hopkins, 129 F. App'x 285, 290 n.3 ("a finding of insufficient evidence for conviction does not establish that Hopkins lacked probable cause to make the arrest") and Russo v. City of Warren, No. 94-1002, 1995 WL 276257, at *4 (6th Cir. May 9, 1995) ("The fact that Shannon Russo received a directed verdict in her favor after trial does not mean that probable cause did not exist to prosecute her."). Therefore, Defendants are not collaterally estopped from relitigating the issue of probable cause.

Second, Plaintiff objects to the Court's consideration of the exhibits attached to Defendants' memorandum in opposition to Plaintiff's motion for summary judgment. Plaintiff contends that because these documents, consisting of the police incident report and witness

statements elicited from the officers at the scene, have not been properly authenticated, the Court cannot consider them. In response, Defendants argue only that the exhibits are properly admissible because they do not constitute hearsay or, in the alternative, because they fall within the public records exception to the hearsay rule. Since Plaintiff has not challenged the admissibility of the exhibits on grounds of hearsay, Defendants' argument is completely non-responsive. The question is whether the documents have been properly authenticated pursuant to Federal Rule of Evidence 901, i.e., whether the documents are what Defendants claim they are.

Although Defendants failed to attach any affidavits authenticating the exhibits, the exhibits were identified and discussed during the sworn depositions of Sergeants Carson and Loy, and of Sheriff Thorp. See Thorp Dep. at 92-107; Exs. 17 and 18 to Thorp Dep.; Carson Dep. at 64, 118-20; Loy Dep. at 84-91. The transcripts of those depositions have been filed with the Court. The Court therefore finds that the exhibits have been properly authenticated and may be considered.

The Court turns then to the question of whether the officers had probable cause to arrest Plaintiff for menacing and for resisting arrest. The existence of probable cause depends on whether, "at the moment the arrest was made . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." Beck v. State of Ohio, 379 U.S. 89, 91 (1964). In making the probable cause determination, the officers must consider the totality of the circumstances, including both inculpatory and exculpatory evidence. See Gardenhire v. Schubert, 205 F.3d 303, 318 (6th Cir. 2000).

Plaintiff maintains that Kimble, Loy, and Carson lacked probable cause to arrest him for menacing. Ohio's menacing statute states, "[n]o person shall knowingly cause another to believe that the offender will cause physical harm to the person or property of the other person. . . " Ohio Revised Code § 2903.22(A). The parties appear to agree that the officers had no evidence that Plaintiff uttered any words to Carolyn Blizzard that constituted a threat of physical harm. He simply told her that he was "tired of [her] shit." Nevertheless, as Defendants note, "[t]he threat need not actually be verbalized; it can be implied by the offender's actions. . . 'The key is whether the victim genuinely believes that he or she is facing physical harm to person or property.'" State v. Friesenhengst, 11th Dist. No. 2002-P-0094, 2003-Ohio-5217, at ¶ 24 (quoting Niles v. Holloway, 11th Dist. No. 96 T 5533, 1997 Ohio App. LEXIS 4517, at *4-5).

In the written statement Blizzard submitted to Deputy Kimble prior to Plaintiff's arrest, Blizzard wrote that "[h]e had his hands up in the air when he was yelling and coming towards me." (Ex. to Defs.' Mem. in Opp'n). In a series of written follow-up questions, Sergeant Carson asked her if she felt threatened by Plaintiff. She responded that she did. (Id.; Carson Dep. at 64). When Kimble asked her if Plaintiff was running after her in an aggressive manner, she responded that he was. (Ex. to Defs.' Mem. in Opp'n). Jennifer Johnson, who witnessed the incident, wrote that Plaintiff got off his tractor, ran toward Blizzard, and yelled at her, "shaking his extended hand at her." (Id.). When asked if Plaintiff chased Blizzard in an aggressive manner, Johnson responded, "Oh yea." (Id.).

Plaintiff argues that he made no obviously frightening physical gestures such as pointing his finger like a gun or pretending to slit his throat with his finger. He contends that, absent any accompanying verbalized threat, his conduct was not serious enough to imply a threat of

10

physical harm.  The Court disagrees.  The menacing statute protects against the threat of *any* physical harm to persons or property, not only against threats of deadly harm.  According to Blizzard and Johnson, Plaintiff ran after Blizzard in an aggressive manner shaking his arms in the air.  More importantly, Blizzard told the officers that she did feel threatened by him.[2]  In the Court's view, the facts and circumstances within the officers' knowledge at the time of Plaintiff's arrest warranted their belief that Plaintiff had knowingly caused Blizzard believe that he would cause her physical harm.  Probable cause therefore existed to arrest him for menacing.

One final argument must be addressed, but it is a red herring.  Plaintiff maintains that the officers failed to consider the totality of the circumstances in determining whether probable cause existed to arrest him for menacing.  Plaintiff essentially argues that the officers should have considered the fact that Blizzard, having previously been warned not to park on his grass, was trespassing on his property, and that he was, therefore, entitled to confront her.  Indeed, Ohio courts have held that "[a] property owner has the right to use reasonable force to eject a trespasser who fails to depart from the property after receiving notice or warning."  State v. Preston, 12th Dist. No. CA 99-02-028, 1999 WL 740420, at *2 (Sept. 20, 1999) (citing State v. Childers, 133 Ohio St. 508, 516, 14 N.E.2d 767 (1938)).  Moreover, "[t]his right to use reasonable force to eject a trespasser is a defense to assault."  Id.

In support of his argument that the officers should have considered the fact that Blizzard was trespassing, Plaintiff cites to Radvansky v. City of Olmsted Falls, 395 F.3d 291 (6th Cir.

---

[2] When asked at trial whether she believed that Hysell was going to harm her, Blizzard replied, "I really didn't know."  She testified that she was "nervous being out there by [her]self." (Ex. 3 to Pl.'s Mot. Summ. J. at 27).

2005). In that case, the Sixth Circuit held that the district court erred granting defendants' motion for summary judgment on Geoffrey Radvansky's claim that the officers lacked probable cause to arrest him for burglary. The court noted that "[o]ne of the necessary elements of burglary is proof of a trespass, which 'can only occur on the property of another.'" Id. at 303 (quotation omitted). Although a neighbor told the officers that Radvansky no longer lived at the house, Radvansky produced a driver's license listing the house as his residence and told the officers that his personal possessions were inside the house. The existence of probable cause hinged on whether, based on what the officers knew at the time of the arrest, they "knew or should have known that Radvansky was a current tenant." Id. at 304. Citing Gardenhire, 205 F.3d at 318, the court noted that in determining whether probable cause exists, officers must consider both inculpatory and exculpatory evidence. Finding that the officers had sided with the neighbor and ignored considerable evidence that supported Radvansky's claim that he had a right to be in the house, the court concluded that a reasonable jury could find that the officers lacked probable cause to arrest Radvansky for burglary. Radvansky, 395 F.3d at 305-07.

      Plaintiff argues that, like the police officers in Radvansky, Kimble, Carson, and Loy ignored exculpatory evidence, namely that Blizzard and others were trespassing on Plaintiff's property. Plaintiff, however, overlooks one crucial difference between the cases. Because trespass is one of the elements of burglary, the question of whether Radvansky had a legal right to be at the property was essential to determining whether probable cause existed to arrest him for burglary. In contrast, while Blizzard's trespass may be a valid *defense* to the charge of menacing, see Preston, 1999 WL 740420, at *2, it does not negate the existence of probable cause and does not constitute exculpatory evidence. While it is true that the officers must

consider the totality of the circumstances, the Court concludes that based on the evidence presented, no reasonable jury could find that the officers lacked probable cause to believe that Plaintiff had committed the crime of menacing.

Plaintiff was also arrested for resisting arrest, a violation of Ohio Revised Code § 2921.33(A). That statute states that "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." A "lawful arrest" is one of the essential elements of the crime. Plaintiff has argued that because the officers lacked probable cause to arrest him for menacing, there was no lawful arrest, and that the officers therefore also lacked probable cause to arrest him for resisting arrest. Because the Court has found that the officers had probable cause to arrest Plaintiff for menacing, this argument need not be addressed. This finding also precludes Plaintiff's claim of prosecution without probable cause. See Thacker v. City of Columbus, 328 F.3d 244, 259 (6th Cir. 2003) (holding that lack of probable cause is an essential element of a § 1983 malicious prosecution claim).

**B.    Official Capacity Claims**

Although Sheriff Thorp initially argued that he was not a proper party to this action, he now concedes that it was proper for Plaintiff to sue him in his official capacity as Licking County Sheriff. See Petty v. County of Franklin, 478 F.3d 341, 347 (6th Cir. 2007). Sheriff Thorp has nevertheless moved for summary judgment on Plaintiff's claim of arrest and prosecution without probable cause.[3] Because the Court has concluded that the officers had

---

[3] The bulk of Plaintiff's response brief is focused on the issue of whether the Sheriff's Office failed to adequately train, supervise and discipline its officers with respect to excessive use of force. However, as Defendants correctly note, the merits of Plaintiff's excessive force claims are not currently before the Court, and the Court makes no determination with respect to them.

13

probable cause to arrest Plaintiff, Sheriff Thorp is also entitled to summary judgment on this claim.  Absent a constitutional violation by the officers, there can be no municipal liability.  See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (for municipal liability to exist, a constitutional violation must take place); Watkins v. City of Battle Creek, 273 F.3d 682, 687 (6th Cir. 2001) ("If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983.").

## IV.     Conclusion

For the reasons stated above, the Court **DENIES** Plaintiff's motion for partial summary judgment (Record at 9), and **GRANTS** Defendants' motion for partial summary judgment on Plaintiff's claims of arrest and prosecution without probable cause (Record at 16).  Plaintiff's claims of excessive force remain pending and will be set for trial.

**IT IS SO ORDERED.**


Date: February 19, 2008                               **/s/ John D. Holschuh**
                                                      John D. Holschuh, Judge
                                                      United States District Court